First case for argument this morning is 15-1549 LifeNet Health v. LifeCell Corporation. Mr. Damaris. May it please the Court, John Damaris for LifeCell. Good morning. No reasonable juror could find direct infringement in this case. In its Jaymall opinion, the District Court characterized the major dispute for trial as, quote, whether plasticizers were removed from the internal matrix by surgeons. The Court further held that if surgeons did in fact remove that plasticizer, there would be no infringement. Then, rather than evidence of direct infringement, to sustain the jury verdict, the District Court relied on traditional proof of inducement. What do the instructions for use say? How do surgeons use this device in the operating room? This is not a direct infringement case. As this Court held in cross-medical, if the surgeons are assembling the final product in the operating room, the apparatus claims do not infringe directly, and no reasonable juror could find so. I seem to recall, you're right, that the District Court initially said that it was going to focus at the time of transplantation for the not-removed limitation. That's correct. But then ultimately got to what could be regarded as the right place, which is what matters is at the time of production in terms of the not-removing plasticizer from the internal matrix. Yes, if you look at the District Court's opinions, both at summary judgment and at JMAW, they're entirely inconsistent. Some portions of the opinions, the judge is talking about the final act is transplantation. What's relevant is what happens at the time of transplantation. Other times in the opinion, the Court then says, so it infringed at the time it was packaged. But then when you look at the proof the Court relied on to sustain the verdict, the Court then talks about what were the instructions for use and how did surgeons handle the products in the operating room. Could it be that he was looking at that to determine if, in fact, at the time of transplantation or at the time of surgery, there was, in fact, plasticizer being removed from the internal matrix? If so, then there's no infringement. There's no infringement. Right, but if he sees the proof, the evidence is proving that there, in fact, was plasticizer being removed from the internal matrix, then of course your side doesn't infringe. That's correct. But he concluded otherwise. By looking at what happened in the operating room, by looking at what surgeons were doing, and by looking at what the instructions for use say. So that is traditionally inducement proof or contributory infringement proof. It is not proof of direct infringement. If you have to look at what's happening in the operating room, there may very well be a case for induced infringement or contributory infringement. But if you're looking in the operating room, it is not a case of direct infringement, which is what my client is charged with here. Indirect infringement wasn't pled and was not tried. So going back to cross-medical, this is clearly four square with cross-medical. There can be no direct infringement here, and no reasonable juror could have found otherwise. Similarly, for the method claims, as this court held in Akamai, if all the steps are not being performed by the accused infringer, it is not direct infringement. And there's no evidence here that LifeCell was somehow controlling the doctors or in any sort of joint enterprise with the doctors. If you look at the language of this limitation… Why would we look in the surgery room? Are we dealing with products here that are prepared for insertion in the human body or to be grafted in the human body? And so it's a state of being up until the time that the surgeon uses the product. Up until the time the surgeon actually does the transplantation. If you look at the words in the claim, and it's are not removed prior to transplantation, that's a verb clause. It's expressing an action, and it's talking about actions happening in the operating room by the surgeons. That's what takes it clearly out of direct infringement. If you have to look at what's going on in the operating room on that verb clause as saying in the operating room you're not removing plasticizers, then my client can infringe. My client sells a product in the package. My client doesn't go into the operating room, doesn't do transplantation, and does not remove plasticizers. I guess the response to that would be, at least the other side's response, would be that what that not remove limitation is really talking about is a property, a feature of the claimed product. And that basically at the time of production, once you produce the graft, you can't remove the plasticizer from the internal matrix at any point in time after production without actually destroying the graft. Well, that certainly is Leifnitz's argument, but it's clearly wrong. And the district court addressed that for square by pointing out that the language isn't you need not remove the plasticizers. The language in the claim limitation is the plasticizers are not removed. It's a verb requiring action. Not removed means there's a remover, and that remover is the surgeon. So even if it is a quality, if you wanted to go with a quality, it's a quality at the time of transplantation. It's not a quality at the time the graft is in the package. You can think about this as a contributory infringement case, for instance, where you make a machine that if you use it necessarily infringes, that's not a direct infringement case. If my client made a graft that necessarily infringes when used, they might very well be subject to liability for contributory infringement. This isn't a contributory infringement case. That graft, whether it necessarily infringes when used or not, doesn't directly infringe when it's in the package when my client sells it. So if we're looking at what happens in the operating room, if we're looking at what surgeons do, this is not a direct infringement case. The direct infringement verdict can't stand. Moving on to the claim construction, this is also a very interesting issue in this case because as Leifnitz says in their brief at page 38, they argued that there's no O2 micro issue here because the trial resolved a factual dispute. And they characterized the factual dispute as, and this is a quote, the fundamental dispute at trial was over where the plasticizer that Leifnitz said was removed was removed from. That's how they characterized the dispute at trial. That is not what this trial was about. The record flatly contradicts that. Their own expert, Dr. Kaplan, admitted at trial where the plasticizer comes from. If you remove the plasticizer from the soft tissue grant, does that necessarily also remove it from the tissue matrix? Not necessarily because it could be on the top. Yeah, some could be on the top. But their expert admitted in his direct testimony, and this is a quote, that the plasticizer comes from, quote, the gaps among the solid matrix, close quote. That's what their expert admitted in direct testimony. In their closing argument, they told the jury the plasticizer comes from the voids and the gaps in the internal matrix. Even in their brief here on appeal at page 30, they talk about the plasticizer coming from the bulk plasticizer in the matrix. So there's no dispute between the parties where the plasticizer comes from. We agree with that, and we said this in our appeal briefs. The dispute at trial was, do the claims cover that or not? If everyone agrees the plasticizer is coming from those gaps and voids in the matrix, there's not a dispute about how the product works. There's nothing to try. The question is, does the not remove limitation cover removing plasticizer from the gaps and the voids? No, no, no. I guess I beg to differ. And what I'm not arguing is the real heart of the claim construction here is what it means to come from the internal matrix. The dispute, it seemed to me, at the end, particularly between the experts, bore down to when we say internal matrix, which, as you know, is defined in the spec and the parties stipulated to that definition, what that means. Isn't that what the parties were fighting about at the end and what the experts were disputing? Yes and no. Let me put a little bit of a different spin on that, Your Honor. What we asked for below repeatedly from the beginning at the Markman hearing through the pretrial in motions in limine during objections in trial and at the end, we asked the court to rule that the limitation not removed means no plasticizer is removed of any kind in the way we said at various times. But you're getting about those two key words, three key words, from the internal matrix. Yes, but the way we characterized it below was bound or unbound, which is this is why I said let me give it a different spin on it. At several occasions, we told the court any removal of plasticizer, whether bound or unbound, from the internal matrix is violation of that provision. Where did you say that? I mean, I see it in your grade brief, but somewhere in your briefs you refer to portions of the record. Yes, if you look at the appendix at A6085, that's one example. This is a motion in limine filed during the trial and look at 6088 in particular. We say at the top of 6088, nonetheless, plaintiff's expert, Dr. Kaplan, now offers infringement theories premised on the notion that there are different types of plasticizer defined by how strongly they are chemically bonded and that some types of plasticizer. That stuff is more confidential than mine. I'm sorry, I won't read it, so I'll just direct you. Thank you. I'm not sure this part is the confidential part. Well, if you want to waive confidentiality, that's fine with me. I think this is not the confidential part, so let me just read this part. Different types of plasticizer defined by how strongly they are chemically bonded and that some types of plasticizer, so-called free or bulk plasticizer, may be removed from the tissue while still satisfying the not-removed limitation. And there's footnote one where we go into detail about that. So it was clearly brought up to – so we were characterizing it below to answer your Honor's questions about what is from the internal – we were using different words below saying bound or unbound. It's the same thing because their position is it only comes from the matrix if it's bound. So we were saying you can't have it that way. The limitation applies to both bound and unbound. It was brought up – this is only one example. We brought it up also on several other occasions. You referred to the jury instructions, and I can't find that now, but I didn't see it in your dispute over the jury instructions. It seemed to me you were still asking for – I think that's on 7689. The construction you were asking for was plain, meaning that no plasticizer is deliberately – so that's a new word – removed from the internal matrix of the soft-tissue graph. Yes. That doesn't seem to me any different than what we were doing in the first instance, which is different from asking for a definition or proposing a definition of what we mean by internal matrix. Yes, it's two sides of the same coin is what I'm saying. We brought up repeatedly to the district court that the phrase no plasticizer removed should be all plasticizers whether bound or unbound. That was brought up in the motion limiting here. It was brought up again during the trial. Could you make that argument in the context of construing not removed? Yeah, so we could look again at Appendix 8196, which is the objection we made during Dr. Kaplan's testimony, and I'll turn to 8196 and just show you what he said there. So Dr. Kaplan testified, and if we look particularly on 8197 at the top, this is our objection during the trial. We're talking about Dr. Kaplan's direct. We said what they are arguing – this is that sidebar – you can remove what they call bulk plasticizer, and that's okay, but if the claims require removal of other kinds of plasticizer, what they are called loosely bound or tightly bound, that is inconsistent with the court's claim construction. We believe it's inconsistent with the claims. It's argument that it's plasticizer only contained in the matrix is bound to the matrix that's contrary to the claim language, and it goes on. Clearly, it was raised in the motion limiting. It was raised during Dr. Kaplan's direct. So, Your Honor, back to your question. We were phrasing it as bound or unbound, but it is the internal matrix issue. Counselor, if the district court had construed not removed in line with your argument, what would the district court have construed it as? The proper construction that would have resolved this issue that was raised to the court would be the not removed limitation refers to all plasticizers, whether bound or unbound, to the internal matrix. That's what the dispute was raised to the district court. Let me try to redefine that or translate that. It means not removing any plasticizer from the actual fibers themselves that make up the internal matrix as well as the voids, gaps between all those different fibers? Yes, Your Honor. That's exactly what the issue was presented to the district court, and that's how the claim term should have been interpreted. So when LifeCellBelow was asking for that term to apply to all plasticizers, that's what they meant, and that's what they raised to the court. I guess I have a couple concerns. One is I didn't see any moment where your side said we need a claim construction right now, and we need a claim construction because there's a debate over what does it mean from the internal matrix. And we need it to make it clear that when you're withdrawing plasticizer, it's from either the gaps in between the different collagen fibers that make up the internal matrix as well as the fibers themselves that make up the internal matrix. And then the second part is that the other side is going to come up and say that when it comes to this very specific issue, your side was very happy to say that this is a fact question for the jury. The scope of the claim, whether it applies to bound and unbound plasticizer from the gaps and the voids, can't possibly be a fact issue. It is true that below we tried it as a fact issue. The parties disputed what this claim covered. Did it cover just the bound plasticizer, or did it cover also the gaps and voids? So we did try that as if it was a factual dispute, but we were essentially presenting to the jury competing claim constructions. There's no dispute that it comes from the gaps and voids. What is the district court supposed to do when both sides agree to the meaning of internal matrix? Both sides that they're given the charge that we're going to go with the plain meaning of the phrase, and then both sides are telling the judge that it's just a fact question. Are you saying that it's an error for a district court then to not treat it as such when it's presented and litigated in that manner? Here was where the error was. At the Markman hearing, when both sides were arguing this issue, the district court said in the Markman opinion, no removal of plasticizer means no removal of plasticizer because LifeNet was arguing at the time that some could come out. And the district court said, no, none can come out. But then the issue boiled down to somewhere, maybe at trial, maybe before trial, maybe after trial, how we were defining the internal matrix. And that seems to be the dispute the experts were having, what is or is not considered the internal matrix. And in that regard, both parties stipulated that the definition in the specification was the definition of internal matrix. But the internal matrix definition does not answer this question. What the internal matrix agreed construction was, was that it includes the collagen and elastin and the other fibers that are together in a matrix format. It is inherently, it has gaps and voids in it. By defining a matrix as the structure that creates it, it doesn't rule out the gaps and voids. If you just think about this in normal English parlance, if you think of a sponge, when you squeeze a sponge, what comes out of that sponge is coming from the gaps and the voids. And you would say it's coming from the internal matrix of the sponge. You're not talking about what's bound to it. At the end of the day, you can't remove all the plasticizer from the tissue graph, can you? I mean, otherwise you destroy it. So there's got to be some plasticizer left. Yes, there is some plasticizer left in the products when they are, whether they're rinsed or not, there is some left. But that doesn't answer the question. The claim scope dispute here is what plasticizers this claim element was referring to. And if you look at the patent specification, you can't come to any other conclusion other than it's referring to what comes out of the gaps. Does it make a difference if you're talking about the soft tissue graph versus the tissue matrix? I'm sorry? Doesn't it make a difference if you're referring to which plasticizer you're removing if you're referring to the soft tissue graph versus the tissue matrix? Well, yes, because if you're referring to the graph, you could be talking about the plasticizer that's on the top as opposed to what comes from the inside. But there's no dispute of factor. Everyone agrees that the plasticizer coming out is the plasticizer that was in the gaps and voids. They said it. Their experts said it. So the argument is whether or not the gaps and voids constitute part of the – are the internal matrix that's referred to in the claim. That's one way to look at it. And as I was just saying, the agreed-upon construction allows for that. The construction says the internal matrix includes the collagen and elastin. It doesn't say it excludes the gaps and voids. It includes as open-ended. And human normal parlance is that when you have a matrix, it has, by definition, gaps and voids. That's what a matrix is. So is the claim construction dispute that you're saying was avoided and should have been dealt with by the district court one which defines what the internal matrix – what it means taking from the internal matrix, whether that includes gaps and voids or not? It could have been resolved that way. But it was presented to the district court as whether the plasticizer removal is bound or unbound. And it answers the same question, whether you approach it from how you define the plasticizers or how you define the matrix, you get to the same answer. Because there's no fact dispute. Can you tell me again where this found and unbound dispute was taking place? I mean in the J-Mall, for example, where there was a claim construction question raised, the district court, at least in 23, says that your proposed claim construction is that there is no partial or full removal of plasticizers from the internal matrix prior to transplantation. That still doesn't get into the nuanced argument about we're just differentiating between bound and unbound plasticizers. Yes, Your Honor. There are two places that it very clearly was teed up to the district court. One was in a motion in limine. When Dr. Kaplan was giving his testimony in the expert reports and that deposition, when he started to argue that it was coming, it was only bound. We made a motion in limine, and it's on A6088, where we told the court, please preclude Kaplan from testifying about this internal matrix bound unbound. And we say at the top, nonetheless, plaintiff's expert, Dr. Kaplan, now offers infringement theories premised on the notion that there are different types of plasticizer defined by how strongly they are chemically bonded. And that some types of plasticizers, so-called free or bulk plasticizers, that's the stuff in the gaps and the voids, may be removed from the tissue graft while still satisfying the not remove limitation. And then we have a footnote with the details. And we asked the court to bar Dr. Kaplan from testifying that way because it's contrary to the court's construction. You're not arguing a different construction there. You're basing this argument on what the court had already said, how the court was going to construe not remove. Yes, you put your finger on it. You're making an argument today, which I appreciate and I understand. I don't see that you made that clear of an argument below. That is from below. That's the motion limited to the district court. So what happened below, just to be clear, at the Markman, when the court ruled, the court said in words, no removal means no removal of any plasticizer. That's what the court said. But then the court didn't construe it. The court just said, no construction necessary. But that's what I mean by it. So what we were saying here in the motion in limine is you told us what you meant. Please put words on that and tell that to the jury. And the court refused at the motion in limine stage to do that. Then during the trial, and this goes back to the judge post question during the trial, when Kaplan testified that way, we brought it up again, Your Honor. And this is on 8197, where we said very clearly to the district court at the sidebar, what they are arguing is you can remove what they are calling bulk plasticizer, and that's OK. But if the claims require removal of other kinds of plasticizer, what they are called loosely bound or tightly bound, that is inconsistent with the court's claim construction. Now, the claim construction was no further construction necessary. What we were telling the court is you told us what you mean by those words. You said all plasticizer can't be removed. Tell the jury that. So we go on to say we believe it's inconsistent with the claims. It's argument that plasticizer only contained in the matrix is bound to the matrix is contrary to the claim. So we told the court at sidebar during the trial, this is contrary, Judge, to what you think the claims mean. Tell the jury. And the court refused. So it is a claim construction. It was teed up from the very beginning. And what you cite in your brief is another example of where you teed this up under the O2 micro is on 7689, which we've already looked at. This is where you asked for a jury instruction. Yes. Well, it doesn't seem to me that what you are proposing to say we need to clean this up, your proposal is plain meaning that no plasticizer is deliberately removed from the internal matrix of transplantation. Somewhere in there, maybe somebody was thinking about a bound or unbound distinction. But it's not called out. That bound and unbound distinction wouldn't have been any clearer to the jury if the judge had given them this instruction. Right? I think that your honor has a point, so I'm not disputing that. But in the context of what was going on below, the court's mind was that limitation applied to all plasticizers, and that's what the court said. So what we were saying is here is tell the jury it applies to all plasticizers. That's the plain language is no removal of plasticizers means all plasticizers. So you have to view that language in the context of what we were arguing about. We argued in the motion in limited to the court. We argued at sidebar. The court knew what the issue was. Did it apply to some plasticizer or did it apply to all plasticizers? Well, you said about a jury instruction. Maybe the court knew, but the purpose of a jury instruction is to make sure the jury knows that. Well, that's why we were asking the court to tell the jury. What the jury heard was one expert saying that limitation applied to some of the plasticizers. But how would the jury instruction that you were proposing, which you said was the revised plain construction, make it any clearer to the jury as to whether or not to accept Dr. Kaplan or your expert on this bound or unbound issue? Because the jury instruction we asked for said all plasticizers. We're way beyond. Yes. We should be. So we'll restore four minutes of rebuttal. Thank you, Your Honor. And we'll add on five or ten minutes. Five minutes for now if we need any more time. Thank you. Thank you, Your Honor. May it please the court. There is no claim construction issue here. Can you start, though, just with the point that your friend started off with? Oh, sure. Direct infringement and the inducement. You know, there is some weirdness in the claim language. Yes, and I readily concede that, and actually I'll talk about that. But I think it's important to remember here that the reason that we were talking about what surgeons do, the reason that was in the case at all was because that was life cells of defense. There was no dispute that they produced plasticized soft tissue grafts that had plasticizer in the internal matrix and were suitable for transplantation. Their argument was, but our instructions require a two-minute rinse that takes place in the operating room, and that rinse, which they said was necessary, removes plasticizer from the internal matrix. Now, the evidence at trial was, A, that rinse isn't necessary, and, B, it doesn't remove plasticizer. And, in fact, our expert testified, and the jury apparently agreed, that you can't remove the plasticizer from the internal matrix of their grafts. So the surgeon, whatever might happen in some other case, in this case, surgeon activity could have no effect on their product, and their product infringed when it was in the surgeon's hands. Nothing the surgeon did has anything to do with that. But the claim is written a bit strangely. It is strange. The reference point with this not-removed limitation is at the time of implantation, not at the time of production. So what is the intent behind this limitation about our not-removed? The intent, Judge Chen, I think, is it's a structural requirement of the claimed graft. And I think that becomes clear when you look back at how it came to be. So it was not originally part of the claims. In prosecution, the claims were rejected in light of the Cavallaro patent. Now the Cavallaro patent was about individual collagen strands, not about soft tissues or matrices or anything like that. And it was a process for strengthening these collagen fibers. The process required removal of the plasticizer. And the examiner thought, I guess since there was collagen and there was plasticizer, that Cavallaro anticipated. And we came back, LifeNet came back, and said, no, plasticizer in ours is not removed. That's a structural feature of these grafts. In fact, they wouldn't be plasticized soft tissue grafts if you took the plasticizer out of the internal matrix. It then wouldn't preserve them. It wouldn't keep the structure and material properties. Do you have examples in your spec where plasticizer is being removed? Where some plasticizer is removed. But the spec, and I think it's, I may get this wrong, I think it's in college. In fact, that might have been, and then there's one part of the citation in the prosecution history in their office action response, citing to a specific. Well, it says support for the not removed addition is present throughout the specification. And it cites as one example an example where the graft is directly implanted without any sort of preparation. But it's clear throughout the specification that what we're talking about is plasticizer that is bound to the molecular structure of the tissue matrix. That's in column one. And there's even an example where it says you can even centrifuge this thing for an hour, and although you're going to remove some plasticizer from the graft, you're not going to remove the tightly bound plasticizer from the internal matrix, and that's what enables it to retain these favorable properties. Just reading all of this stuff, it seems to me there are some choices. I mean, some say the plasticizers are in the gaps or in the holes. Then there's bound, and isn't there an argument somewhere between the experts whether or not they're on the surface versus being bound? This is lightly bound versus tightly bound. Well, I don't think there is a difference between free plasticizer, tightly bound, and loosely bound.  But you're saying that the loosely bound plasticizers are not covered, as those where we're talking about the claim which say from the internal matrix. Oh, no, those are in the internal matrix as well, and Dr. Kaplan testified on that. Okay, so those don't come out. Those don't come out, nor do the tightly bound plasticizers. What comes out is the free plasticizer that's in the gaps or on the surface of the graft. And that was a factual issue. That was a factual dispute between the experts and Judge Chen. You're right. I am going to point out that Lysell repeatedly told the court that there's no question, 8699, there's no question that plasticizers came out. Where the Plaintiffs and Defendants Park Company is, according to Kaplan, pardon me, it's not coming out of the internal matrix. Once we demonstrate that it's removed, our expert is going to tell you it indeed comes out of the internal matrix, and we agree that question will unquestionably be for the jury. That's what this trial was about. There was no dispute about the claim construction of the not removed limitation. The court said not removed means not removed. That's what they say in their brief. For example, reply brief page 12, it says it means what it says, not removed means not removed. What about the motion eliminated where they are pointing out that Kaplan, Dr. Kaplan, is essentially performing a claim construction and then applying a claim construction in his testimony on infringement? Well, first of all, I don't think that the motion eliminated says that. They did try to argue that it was inconsistent with the claim construction because they had moved in limine to say, and their motion didn't have anything to do with bound or unbound. Their motion eliminated said don't let them say that some kinds of plasticizer can come out and other kinds can't, and remember their product, their solution E, has three different plasticizers in it. So that's the background against which this motion comes. And the court in ruling on their motion in limine said plaintiff, and this is A7609, plaintiff may offer testimony that the plasticizers removed do not come from the internal matrix. So the court did not interpret its claim construction the way they say it did or certainly the way they interpreted it. This was always about, this isn't about different types of plasticizers. This was a dispute about where are these plasticizers coming from? Are they coming from the internal matrix or are they? Yeah, but one of the, if you just step back a minute, one of the arguments that your friend makes is this is the classic or somewhat like the O2 micro situation where there was initially a broad claim construction and then part, as we drilled down, people figured out, well, wait a minute, that aspect of the claim construction doesn't really answer the true claim construction issue here. And so they pressed in their motion in limine the suggestion, no, no, no. Okay, you said it broadly. We didn't differentiate between plasticizers, but now this expert testimony is going to do so and that's not consistent with the claim construction we thought we got. Whether they're right or wrong is another matter, but the threshold question is whether or not this is a claim construction dispute. I don't think it is, Your Honor, and I hearken back to something that Mr. DeMera said. I think it may have been Judge Chen asked him what should the instruction have said, and he said, and I may not get this exactly right, but he said it should have said no plasticizer can be removed whether bound or unbound. You will search this record, you know, to eternity, and you are never going to find a proposal for an instruction anywhere near that. That was not what this case was about. What they kept asking the judge to do, the judge said, look, it's plain meaning, not removed means no plasticizer is removed. They agreed with that, and they repeatedly told them, we're not asking you to change your construction. We just want you to clarify it. We want you to say plain meaning means no plasticizer is removed. Judge Prost, I think as you pointed out, how is that going to tell the jury anything about bound and unbound, which the experts have been arguing about, and the attorneys have told the jury this is a factual issue. Dr. Kaplan says that there are gaps. These gaps are in the tissue. They're not part of the internal matrix. Dr. Badlock said there are no gaps. There are absolutely no gaps. I'm 100% confident that there are no gaps, and therefore any plasticizer that comes out of this graph necessarily comes out of the internal matrix because they are one and the same thing. That was a dispute presented to the jury, and even as late as the motion. Just back to the motion of limiting briefly. It seems to me they made that point. They said, wait a minute. We thought not removed meant not removed, everybody, but now we're drilling down and we're seeing that this expert is going to differentiate what not removed means, not removed including the non-loosely bound and including the loosely. Why is it they were drilling down on what the claim construction that they thought was fine until they saw the expert report and saw that he was going to differentiate between the plasticizers? Well, let's assume that that's what they were doing. I don't think the motion of limiting says that, but let's assume that's what they were doing. Then what they should have done was gone to the court with the proposed instruction that Mr. DiMera said today is the instruction that they wanted, which is no plasticizer, whether bound or unbound, can be removed from these graphs. That's not what the claim language says. It's not what the experts testified about, and most importantly, it is not how they asked the district court to instruct the jury. This is an argument that is being made for the first time on appeal. After everybody was perfectly happy, certainly Lysell was perfectly happy with plain meaning of this, which is not removed from the internal matrix. Well, they were making multiple objections real time during the trial while your expert was being examined, right? Well, they made one objection, and it essentially repeated their motion in limine argument. Interestingly, what they told the court is, hey, judge, you ruled on this in your motion in limine, and look, he's doing it. The judge said, you're misinterpreting my order. That is not what my motion in limine said, and hearkening back to that, plaintiff may offer testimony that the plasticizers removed do not come from the internal matrix. This was a pure dispute between experts, the way this case was tried, and there was nothing about the jury instructions that they requested that would have changed that. I think it's important to point out that Dr. Kaplan expressly agreed with the construction that if any plasticizers come out of the internal matrix, then there's no infringement. So this was not a case like O2 micro or the recent decision in the Eon case where the experts were presenting conflicting claim constructions to the jury. The construction of the not removed limitation was not in dispute. Isn't that the problem that we have here? All the different arguments, some of them, they're pretty fundamental, each one of these arguments. It seems to me that maybe we go back to the question, didn't the district court err in not construing not removed? Well, Your Honor, I think not, and here's why. The life cell argued that plain meaning, not removed means not removed. Page 12 of the reply brief, they say it again. Not removed means not removed. The judge agreed with that and said, you know, essentially said these are plain English terms. Plasticizers are not removed from the internal matrix. No further construction needed. Basically what they were asking them to do was sort of them, and even they said so. We're not asking for a different construction. We want you to clarify it. So they basically wanted them to. I see that maybe the parties were in agreement. I don't see anybody pushing for construing not removed. But it seems to me that the whole case was headed to this perfect storm that we're now involved in, and the court should have seen that and said I'm getting, now I'm receiving these different arguments with respect to which plasticizers, or is it from the soft tissue graft or from the tissue matrix, and to what extent, bound, unbound. Wouldn't it have been better if the court had just construed the not removed limitation? Well, Your Honor, I don't think so. First of all, I don't think that the case was moving toward a perfect storm. I think the case ended the way it started, which was the dispute was plasticizers come out of these grafts. We know that. From what part of the grafts do they come? That was the issue at trial, and that was the issue. Everybody agreed that was the issue at trial. Now, could the judge have used different words? Maybe, but what he would have been doing was just, particularly if he accepted the only proposal that was put in front of him, he would have just been rearranging the words he was already using to say, you know, okay, plasticizers are not removed means no plasticizers are removed. Maybe that would have been a clarification, maybe not, but it certainly would not have gone to the issue that Mr. Tamaris now says is the key issue, this bound and unbound stuff. And, again, you know the – Let me restate Judge Reina's question because I think he's making a point, which is does a district court have an obligation when it sees, as the trial is moving forward, that what the dispute is really about is more akin to a claim construction dispute than a fact question about infringement. Does a district court judge have an obligation under those circumstances to say we need to do a claim construction on this very drilled down issue before moving forward? I'll start by briefly disputing the premise, which is I don't think this was moving, at any point, moving to a claim. It's a hypothetical. I understand. Okay, so I won't fight the hypothetical. I don't think that a district judge sua sponte has the obligation to do that. Trials are adversary proceedings. The parties have to present positions to the district court. Would it be error for a district court to do that? No, I don't think it would be error for a district court to do that, nor, Judge Reina, do I think it would have been error for the district court to accept what their actual proposal was, plain meaning no plasticizers are removed. But that's not the issue here. The issue is was it reversible error for him not to do that, and I think given the way this case was tried, given the proposed instructions he was presented with, there's no way that this was error for him essentially to try the case that the parties wanted to try using the constructions that everybody agreed it was correct. It was just a question of should he say more to clarify it. He decided not to, and that is not error on this record. Can I take you to another smaller issue that your friend did not raise but it's raised elsewhere, which is there seems to have been arguably a burden-shifting thing going on here. Your witness didn't do any tests himself, Dr. Kaplan. They complained about that, and even in the closing argument, your side says this is the internal matrix, and they would have to prove to show not infringement that the plasticizer is removed from this internal matrix. Is that really right? The burden's on you. Oh, absolutely, the burden's on us, and I think it's important to note Dr. Kaplan didn't do any testing of his own because there was a wealth of test information from LifeCell put into the record that he relied on, and actually they crossed him on this, as you would expect. You didn't do any testing of your own, did you? He said, no, I didn't need to because you did, and looking at your tests, I can see the plasticizer remains in there. The structural qualities of the graft have not changed, and because of the nature of the binding reactions that take place between the plasticizer and the matrix components, I can tell you that plasticizer does not come out of your internal matrix. So there was plenty of evidence here, whether he did his own tests or not, there was plenty of evidence here on which the jury could conclude that plasticizer does not come out. And the reason for the closing argument, Your Honor, is because, as I said at the outset, there was no dispute that they have plasticized soft tissue grafts with plasticizer in the internal matrix. The issue was their defense, which is, we have instructions for use that have to be followed, and if you follow those instructions for use, plasticizer comes out. So that's the context in which this closing argument was made. It was because their whole argument was, okay, fine, we have these plasticized soft tissue grafts, but our instructions require, essentially, that plasticizer come out of the internal matrix, and that didn't happen, and they weren't able to prove that. So that's the context. I don't think there was any burden shifting here, Your Honor. It was really just a matter of what the evidence showed and the positions the parties took. And if I could just, I see I still have a couple of minutes left, just to get back to the point that Mr. Damaris started on, and Judge Chen, I think you commented that this is sort of an unusual limitation, this not-removed limitation, and I agreed with that, and I think I explained where it came from in terms of the prosecution history. But what's unusual about the limitation, I think, is that it states expressly what's actually implicit in any claim that claims a device designed for a particular use. Every claim that defines a product for a particular application implicitly says, here's this device, and don't change it before you use it, because it's designed for this particular application. I mean, think about a claim to a wooden structure suitable for sitting upon consisting of a seat and four legs of equal length. If you added a limitation wherein no leg is sawed off before sitting upon it, that doesn't change the fundamental structural nature of the product, but you can imagine that if the claim was rejected over a three-legged stool in prosecution, you can see where such a limitation might have come from. It doesn't change the fact that it's a structural limitation. It doesn't mean that you have to actually sit on the chair to infringe the claim to it, which is essentially LifeCell's argument that if you don't actually transplant these things, you haven't infringed a claim. The claims are to a graft suitable for transplantation, having a particular structure. Those are the grafts they made, and those grafts infringe. The court has no further questions. Thank you, and thank you for the additional time. Thank you. A few points. I think it has to be recognized at bottom there is no factual dispute. Both sides agree the plasticizer removed by the surgeons in the operating room comes from the gaps in the woods. This isn't a trial about how do the products work. It's not a trial about do they come from the internal matrix. They come from the gaps and the voids in the internal matrix. Everybody agrees to that. The question is, legally, does the claim cover that or not? And if we have to look at what the claim means, and it's not correct, as counsel said, that this wasn't teed up for the district court. And by the way, it wasn't just teed up once. It was brought up multiple times. We referred to two of them on my opening comments. There was a written motion in limine, which was clear as can be, about found versus unbound gaps and voids and bulk versus non-bulk. It was brought up in the objection I showed you in Dr. Kaplan's testimony. We went up to the sidebar. We explained, hey, this dispute is going on. This is not what the claim means. It was brought up again. We rejected more than once during Dr. Kaplan's. We objected also at A8271. So twice during Dr. Kaplan's testimony. Then at the end of LifeNet's proof, we wrote a written 50-A motion where we briefed again this bound-unbound issue, and that's at A7671. Then at the conclusion of the trial, we submitted a trial brief. So this was not brought up once to the district court. It was brought up once in the motion in limine, crystal clear. Brought up twice during Dr. Kaplan's testimony, crystal clear. On this issue, and briefed in a Rule 50 motion at the close of LifeCell's evidence. The judge had every opportunity to say what this claim meant legally. And if we look at the claim, the claim construction, it can't mean what LifeNet wants it to mean. The claim language doesn't say bound or unbound. It says removal. No plasticizer shall be removed from the internal matrix. And if we look at the specification, it's very clear that the applicants knew how to say bound or tightly bound or loosely bound. Those are words in the specification. They don't put those words in the claim. They say no plasticizer shall be removed. They don't say no removal of the bound plasticizer, and those are the terms they use in the specification. If you look at the specification... Isn't that somewhat inherent in the device that we're looking at? Because you can't remove the bound plasticizers. Right, but that's the whole point. The way they're reading limitation makes zero sense. If you read that specification, it talks all throughout the specification. How do you remove the plasticizers? Do you have to remove the plasticizers? You can do a direct implantation where you don't remove them. You can lightly rinse it where you remove the plasticizers on the exterior. You can do a more thorough washing where you remove almost all of the plasticizers. That's what the specification is talking about. When the specification talks about removal of plasticizers, it's talking about removing them. It's not talking about the ones that can't be removed. It never says that. I'm sorry. You cited A7671 of your 50A motion as objecting to the claim construction? 7671. Right, or somehow insisting that the claim construction needed to be repaired? No, it refers to the bound-unbound issue is what I was saying. I'm sorry. You were on the fly. You were building a lot of momentum. Can you tell me where on A7671? Let me find it. So I'm sorry. It's 7672. Thank you, Your Honor. If you look at the top of 7672, the first whole paragraph, because Dr. Kaplan's opinion regarding the removal of non-bound plasticizers contradicted the court's claim construction, violated the court's in limine order, and could not in any event be accepted by any reasonable juror, there is no substantial evidence that defendants accused products. So that's where it was on the second page. Sorry about that. How did it violate the judge's in limine order? The way the judge ordered the in limine in response to the motion that I said, he said you can't say that some types of plasticizers can be removed and some types of plasticizers can't. I thought he said it's okay to testify that there's removal of some plasticizers as long as there isn't any plasticizers being removed from the internal matrix of the tissue graph. Exactly. It was a confusing order. So we were explaining there that when the judge said you can't testify that some can be removed and some can't, that was this bound-unbound issue. So that's what we were trying to bring to the court's attention. But to go back to what they're saying, the term means, it can't mean what they say. This application, all through the application, the specification talks about removing the plasticizers by rinse. It's never talking about not removing the ones that can't be removed. So it's sort of a made-up understanding. There's that one place in maybe Column 11 about tightly associating plasticizers to the molecular structure of the graph, right? That would be the internal matrix. Yes, Your Honor. I was talking about the removal language. Everywhere the specification talks about removing plasticizers, it's talking about how you do it through a rinse. But then more fundamentally, the application was rejected over Caviero. Caviero isn't just a single strand. Caviero also talks about bunches of collagen fibers. And the patent office said the original claims couldn't be patentable over Caviero, which was the original claims allowed removal or not removal, allowed both. The applicant didn't fight the rejection, but amended the claims to say no removal. And the only way that makes sense is if it's talking about the plasticizers that can be removed, because otherwise it wouldn't distinguish Caviero. So you can't read this patent and come away with the understanding of the limitation that they have because there's no support for it in the spec. And lastly, on the direct infringement issue, you cannot read that limitation with the words no removal prior to transplantation and change those words to in the package or prior to packaging. And the district court found that. It means prior to transplantation, which happens in the operating room, by the surgeon, and there can't be any direct infringement here. Thank you. Thank you.